

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-15-2004

# Besnik v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Besnik v. Atty Gen USA" (2004). *2004 Decisions.* Paper 227.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 03-3428

KORBECI BESNIK,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES,

Respondent

On Petition for Review from an Order of the
Board of Immigration Appeals
(Agency No.: A78-511-545)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 8, 2004

BEFORE: SLOVITER, VAN ANTWERPEN and COWEN, Circuit Judges

(Filed: October 15, 2004)

OPINION

COWEN, Circuit Judge.

Korbeci Besnik seeks review of the December 19, 2001 order of the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT"). We will deny his petition for review.

## I.

Besnik is a native and citizen of Albania. He entered the United States on December 9, 2000. That same day, the Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA"), charging that Besnik is removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1152(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled. Besnik conceded removability but applied for asylum, withholding of removal, and protection under the CAT. On December 19, 2001, after a hearing at which Besnik testified, the IJ issued a decision denying Besnik's applications. The IJ found that Besnik had submitted a false document in support of his application, that his testimony was not credible, and that his testimony was not consistent with current conditions in Albania, as reflected in State Department reports. On July 18, 2003, the BIA affirmed the IJ's decision without opinion. This appeal followed.

Besnik testified that he feared persecution in Albania because of his affiliation with the Democratic Party ("DP"). The DP came to power immediately after the fall of communism in Albania in the 1990s. In the 1997 elections, the Socialist Party gained majority control of the government. The DP is currently an opposition party, which participates in elections and holds seats in the national parliament. Besnik became a

2

member of the DP on July 20, 1998. His father had been a financier of the party and his family knew many of the leaders of the DP in his hometown, Juracoster. Besnik testified that his trouble with the police began shortly after he became a DP member.

On July 28, 1998, Besnik attended a DP protest rally. During that rally, the police arrested many protesters. Besnik was not arrested, but testified that he was beaten about the head and body with a rubber baton. Besnik did not seek medical care from a doctor or hospital, but was treated at home. According to Besnik, many protestors throughout Albania were attacked by the police, and the DP filed a complaint in Parliament.

On August 4, 1998, Besnik testified that he was stopped by two members of the Albanian secret service or SHIK.[1] The SHIK agents put him in a car, drove him outside the city, and told him to stop his association with the DP. When Besnik refused, the agents punched, kicked, and threatened him. After beating him up, the SHIK agents left him outside the city. Besnik testified that he was in pain from the beating, but did not seek medical attention. He testified that he was afraid to seek medical treatment, because he feared reprisals by the SHIK agents if he did. He did report the incident to the DP. The DP, in turn, filed a complaint with the police.

On September 12, 1998, one of the DP members was killed by an unidentified gunman. The DP was dissatisfied with the government's efforts in finding the killer, and staged massive protests. Besnik took part in one such protest. The police and SHIK

---

[1]The briefs and record refer to the Albanian national intelligence service as either SHIK or phonetically as "sheik." For consistency, we will refer to the service as SHIK.

forces broke up the protest and arrested several protesters, including Besnik. He was detained for three days and beaten several times. During his detention, Besnik was questioned about the DP's plans and meetings, and told to stop his membership in the party. He was released after three days. He testified that he had fainted twice during his detention, that he was not fed, and could not breathe well. He did not seek medical attention upon his release. Besnik testified that the police told him they would beat him again if he went to the hospital.

On May 3, 1999, the DP hosted a ceremony at which new members were awarded their membership booklets. Besnik received his booklet at this ceremony, and was also elected to be Secretary of the Youth Forum of the DP of his city. The Secretary's responsibilities including going into schools and workplaces and recruiting new members. After the ceremony, Besnik was again detained by the police. The police questioned him about the intentions and workings of the DP. Besnik did not answer their questions, saying only that the DP was a legal party, it held one-third of the seats in Parliament, and the workings of the DP were none of the police's business. The police then yelled at Besnik and beat him. Besnik was detained for about four hours. He was released when members of his family, including his father, came looking for him. When Besnik's father came to the police station, the police spit in his face and threatened him. They told his father that if Besnik did not stop his involvement with the DP, they would eliminate him.

Besnik testified that another incident took place on October 1, 2000. Besnik

4

testified that he was working as an election monitor on behalf of the DP candidate, and began to suspect voter fraud. He was upset by this, and began talking to "newspaper individuals or editors." (AR at 138.) The police and agents of the SHIK grabbed him and put him in a car, where they told him to keep quiet or "we will eliminate you without a wink of an eye." (Id. at 139.) He was released after an hour and a half. A member of the Socialist Party won the election.

On October 3, 2000, Besnik participated in a protest outside the DP party headquarters in Juracoster. The DP was protesting what it saw as a stolen election. The police and SHIK agents broke up the protest. Besnik was arrested and detained for two days. During that time, he was beaten and threatened. His family was also threatened. He suffered cuts on his lip, the back of his head, and his legs as a result of the beatings. After he was released, he sought medical attention for his injuries at the city hospital. When he left the hospital, he went to a friend's house, because the police had already been at his parents' house looking for him.

Besnik's parents advised him to leave the country, because the police had visited them several times after his last release. On October 7, Besnik left Albania for Greece. From there he traveled to Mexico and finally, to the United States.

Besnik testified that the police continued to harass his parents after he had left the country. His family has since left Albania for Greece. He submitted an article from a "free newspaper," which described the Socialist Party's "hunt" for members of the DP.

5

(Id. at 216.) The article mentions two DP members in passing, both election commissioners, then describes in detail the government's treatment of Besnik. He did not submit medical records from the city hospital, but explained that his cousin tried to obtain them and was told that the hospital would not release them. Besnik also submitted a letter confirming his employment at a state run fuel storage facility, and a letter from his father, who had moved to Greece, telling him that the police in Albania were still looking for him.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). To be eligible for asylum, an alien must show that he qualifies as a refugee, "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b). The persecution must be on account of race, religion, nationality, membership in a particular social group, or political opinion, and the fear of persecution must be subjectively genuine and objectively reasonable. Id.; Chen Yun Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). The alien bears the burden of supporting his asylum claim, and credible testimony may be sufficient to support a claim. See 8 C.F.R. § 208.13(b). In order to be eligible for withholding of removal, an alien must show that there is a clear probability that he will be persecuted on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A); Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003); Dia v. Ashcroft, 353 F.3d 228, at 233 n.1 (3d Cir. 2003) (en banc). To be eligible for protection

6

under the CAT, an alien must show that he is more likely than not to be tortured in the country of removal. 8 C.F.R. § 208.16(c); Dia, 353 F.3d at 233 n.1.

Besnik first challenges the constitutionality of the BIA's order affirming the IJ's decision without opinion, arguing that the regulations impermissibly provide that the BIA need not explain its decision. We have already rejected a similar challenge, finding that these regulations are constitutional. Dia, 353 F.3d at 240-41. We must therefore reject Besnik's challenge in this case.

Besnik also argues that his case must be remanded to the IJ, because the possibility of voluntary departure was never explained to him before the IJ issued her decision. It does not appear that this issue was ever raised before the IJ or the BIA. "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252 (d)(1). Because Besnik has failed to exhaust his administrative remedies with respect to his voluntary departure argument, we will not entertain it here.

Besnik's remaining challenges hinge on the IJ's determination that his testimony was not credible. When the BIA affirms an IJ's decision without opinion under 8 C.F.R. § 1003.1(a)(7), we review the IJ's decision directly. Tarrawally, 338 F.3d at 184; Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). We review the IJ's factual findings, including credibility determinations, under the substantial evidence standard, and such findings "are conclusive unless any reasonable adjudicator would be compelled to

7

conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Tarrawally, 338 F.3d at 184.

The IJ based the credibility determination on several factors, but focused on her determination that the newspaper article Besnik submitted in support of his story was a fraud. The article goes into great detail about Besnik's persecution, including details such as the date he joined the DP and the date he was given his membership book. The article does mention the persecution of two election commissioners as well, but only in passing and not in any great detail. The IJ found the details included about Besnik's story made the validity of the article suspect, noting:

> Who cares about [these details] except for an Immigration Judge in America? Why would anybody in Albania care even for one second about when Mr. Besnik joined the Democratic Party or when he got his party document? That sentence, standing alone, convinces the Court that this is a concoction, completely calculated to try to mislead the undersigned.

(AR at 57.) The IJ then noted that the article states that Besnik's medical treatment was corroborated by the records in the city hospital. She found it unbelievable that a journalist, whom Besnik said he did not know, was able to look at the records in the hospital, after Besnik testified that the hospital would not allow his cousin to view or obtain copies of the same records. Finally, she found that the article was not objective, and the newspaper appeared to be a mouthpiece for the DP or some other opposition group. Although the IJ cited other reasons in support of her adverse credibility determination, she stressed that her finding that the article was fraudulent was the main

8

reason for that determination.

Besnik challenges the IJ's credibility determination, arguing that the IJ did not find any inconsistency in his testimony. The 2001 United States Department of State Profile of Asylum Claims and Country Conditions for Albania states: "it is possible to purchase a newspaper article to disseminate whatever information the purchaser desires." The newspaper article does appear to be a piece of propaganda, rather than an objective newspaper article. The article tracks Besnik's testimony exactly, down to the date of his admittance to the DP and date he received his party documents. As the IJ noted, this level of detail is surprising, especially because Besnik was a local leader in the Youth Forum of the DP, not a national figure. In addition, the State Department report directly contradicts the article, stating "[d]espite opposition claims of massive party disenfranchisement and other manipulations nation-wide local elections held in October 2000 made clear and unmistakable progress toward meeting democratic standards. . . The elections were carried out in a calm and orderly manner with very few incidents of violence." (AR at 197.) The report further states "[a]ll political parties have been active in most of the country without a pattern of mistreatment, even during the dark days of 1997." (Id.) Because Besnik never challenges the IJ's finding that the article was fraudulent or explains why that finding was incorrect, we cannot conclude that a reasonable fact-finder would be compelled to conclude that the article was genuine. Thus, we will not disturb the IJ's finding. A finding that Besnik submitted false evidence to bolster his asylum

claim would logically cast doubt on his credibility as a whole, and we find that substantial evidence supported the IJ's credibility determination.

Besnik also argues that the IJ impermissibly required corroborating evidence regarding his asylum claim. Under the regulations, an alien's credible testimony may be enough to establish his eligibility for asylum. 8 C.F.R. § 208.13. In this case, however, the IJ found Besnik's testimony not to be credible, and that determination was supported by substantial evidence. It was not an error, therefore, to look for corroboration to offset that determination. The type of corroboration noted by the IJ was also proper. When corroboration is required, [t]he BIA's rule contemplates a three-part inquiry: (1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Abdulai, 239 F.3d at 554 (internal quotation marks and citation omitted). It is reasonable for an IJ to expect a petitioner to submit medical records. In re S-M-J, 21 I&N Dec. 722, 725 (BIA 1997). The IJ found Besnik's explanation that he attempted to get his medical records through his cousin, but that the cousin was not given access to the records suspicious, because an unrelated party was given access to those same records. In addition, it was not unreasonable for the IJ to expect some confirmation of Besnik's active involvement in the DP and his troubles with the police, in the form of an affidavit from one of the higher-level member of the DP in his city. This is especially

10

so because Besnik had no trouble obtaining information from Albania, as evidenced by his ability to obtain a passport and a letter confirming his employment in a state-owned facility.

Because the IJ found that Besnik's testimony was not credible, she found that he had not sustained his burden of proof for his asylum, withholding of removal, and CAT claims. We find no error in these decisions. Finally, Besnik presented no evidence that established that the Albanian government had a pattern or practice of persecuting members of the DP. Accordingly, we will deny Besnik's petition.

## III.

For the foregoing reasons, the petition for review will be denied.